**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DWAINE HARGIS,

        Plaintiff,

vs.                                                                        Case No. 6:12-cv-723-Orl-37KRS

CITY OF ORLANDO, FLORIDA; CHIEF
PAUL ROONEY; and OFFICER
THEODIS SPRINGER,

        Defendants.

_____

**ORDER**

This cause is before the Court on the following:

1.      Plaintiff's Amended Complaint (Doc. 4), filed June 6, 2012;

2.      Defendants' Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum of Law (Doc. 11), filed July 19, 2012; and

3.      Plaintiff's Response to Defendant's Motion to Dismiss (Doc. 12), filed August 3, 2012.

Upon consideration, the Court hereby grants in part and denies in part the motion.

**BACKGROUND**[1]

On May 12, 2008, around 4:15 a.m., Defendant Officer Theodis Springer ("Officer Springer"), an officer with the Orlando Police Department, observed Plaintiff in "a white 2000 Pontiac Grandam [sic] traveling along the east side of a business." (Doc. 4, ¶ 22.) Officer Springer later reported that "the vehicle's presence at the business appeared to

_____

[1] These factual allegations are taken from the Amended Complaint (Doc. 4). *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The Court does not make findings of fact at this time.

be suspicious due to the time of day and the fact that the business was closed." (*Id.* ¶ 23.) He conducted a traffic stop of Plaintiff's vehicle. (*Id.* ¶ 25.) After Plaintiff exited the vehicle at Officer Springer's request, Officer Springer placed handcuffs on Plaintiff and searched his person. (*Id.* ¶¶ 28–29.) Officer Springer retrieved a firearm from Plaintiff's person, and a subsequent search of the vehicle yielded another firearm in the unlocked glovebox. (*Id.* ¶ 30.) Plaintiff was arrested by Officer Springer and charged with possession of a firearm by a convicted felon, robbery with a firearm, and aggravated assault with a deadly weapon. (*Id.* ¶¶ 6, 31–32.) Those proceedings terminated with a nolle prosequi after the state court granted a motion to suppress the evidence. (*Id.* ¶¶ 9–12.)

Plaintiff brought suit against Defendant City of Orlando, Florida ("the City"), Defendant Chief of Police Paul Rooney ("Chief Rooney"), and Officer Springer. Plaintiff brought claims: (1) under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments, alleging that he was unlawfully stopped and searched and that he was maliciously prosecuted; and (2) for the state law torts of false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. (Doc. 4.) Defendants moved to dismiss the Amended Complaint on the ground that Officer Springer is entitled to qualified immunity, and thus claims against him, the City, and Chief Rooney must fail. (Doc. 11.) Plaintiff opposed the motion on the ground that Officer Springer lost his qualified immunity when he conducted the investigatory stop without reasonable suspicion and the arrest without probable cause. (Doc. 12.)

## STANDARDS

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The

pleader must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[D]etailed factual allegations" are not required, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). The U.S. Court of Appeals for the Eleventh Circuit has recognized that "[a]fter *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). A court must consider the complaint itself, any "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "The Supreme Court has urged [courts] to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only." *Marsh v. Butler*, 268 F.3d 1014, 1022 (11th Cir. 2001).

## DISCUSSION

### I.    Section 1983 Claims

To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law and deprived him of rights protected by the Constitution or a federal statute. *Motes v. Myers*, 810 F.2d 1055, 1058 (11th Cir. 1987). Acts performed by a law enforcement officer in his capacity as a law enforcement officer, even if illegal or unauthorized, are considered to have been performed under

color of state law. *See United States v. Classic*, 313 U.S. 299, 326 (1941) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law.").

Because Plaintiff asserts that Defendants are state actors (Doc. 4, ¶¶ 16–18), the color of state law element has been adequately pled. *See Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir. 1995) ("[E]mployment [with the state] is generally sufficient to render the defendant a state actor.").

Plaintiff's Section 1983 claims are not clearly delineated, with separate counts for "Invasion of Privacy in Violation of the Fourth and Fourteenth Amendments" against all Defendants (Count I); "Malicious Prosecution in Violation of the Fourth, Fifth, and Fourteenth Amendments" against the City and Chief Rooney "by and through" Officer Springer (Count II); "Policy, Practice, or Procedure" against the City and Chief Rooney (Count III); and "Failure to Train and/or Supervise" against the City and Chief Rooney (Count IV). Thus, some of Plaintiff's Section 1983 counts address constitutional deprivations, while others address only theories of liability not actionable under Section 1983 unless paired with a constitutional deprivation.

To make sense of these separate counts, the Court understands Plaintiff to allege two distinct constitutional deprivations. First, Plaintiff alleges a Fourth Amendment violation for the allegedly unlawful stop and search. Second, Plaintiff alleges a Fourth Amendment violation for the allegedly malicious criminal prosecution brought against him.[2]

---

[2] Plaintiff asserts violations of the Fifth and Fourteenth Amendments in addition to the Fourth Amendment in Counts I–IV. However, the Due Process Clause of the Fifth Amendment pertains only to the federal government. *See Buxton v. Plant City*, 871 F.2d 1037, 1041 (11th Cir. 1989). As Plaintiff does not allege federal participation, a violation

### A. Unlawful Stop and Search in Violation of the Fourth Amendment (Count I)[3]

The first claim that Plaintiff alleges pursuant to Section 1983 is a violation of the Fourth Amendment for the allegedly unlawful stop and search.[4] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S.

---

of the Fifth Amendment cannot be a basis for the Section 1983 claims. The Fourteenth Amendment protects citizens against deprivations of liberty. U.S. Const. amend. XIV, § 1. However, as pled, the Court understands Plaintiff to invoke the Fourteenth Amendment for its purpose in making the Fourth Amendment applicable to the states. *See Payton v. New York*, 445 U.S. 573, 576 (1980). The Court thus considers Plaintiff to bring Fourth Amendment claims only.

[3] Plaintiff titles Count I "Invasion of Privacy in Violation of the Fourth and Fourteenth Amendments." The Court construes this count to allege an unlawful stop and search in violation of the Fourth Amendment.

[4] As an aside, the state court's granting of the motion to suppress in the prior criminal proceeding cannot collaterally estop Defendants' assertion that Plaintiff was not unlawfully stopped and searched. The "rules of collateral estoppel apply to actions brought under 42 U.S.C. § 1983 and can give preclusive effect to judgments rendered in state criminal proceedings." *Webb v. Ethridge*, 849 F.2d 546, 549 (11th Cir. 1988). When a prior judgment was rendered by a state court, a federal court facing a collateral estoppel claim must apply the state's law of collateral estoppel. *Id.* "Under Florida law, collateral estoppel applies if (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction." *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1329 (11th Cir. 2003) (citations omitted).

The state court granted Plaintiff's (then-Defendant's) motion to suppress the evidence on the ground that he was stopped and searched without reasonable suspicion or probable cause. (Doc. 4, pp. 21, 33.) However, while Plaintiff was a party to that proceeding, the instant Defendants were not, nor were they in privity with the State of Florida, the other party in that proceeding. *See Farred v. Hicks*, 915 F.2d 1530, 1534 (11th Cir. 1990) ("[A]lthough [the plaintiff] was a party in the state criminal proceeding and is a party in this civil case, neither the police officers nor the [head of the police department] were parties to the criminal case."); *Gentile v. Bauder*, 718 So. 2d 781, 783 (Fla. 1998) (concluding that police officer was not in privity with the state such that liability under Section 1983 could be imposed where evidence was suppressed in criminal proceeding because officer's affidavit in support of a search warrant was insufficient). Thus, because of a lack of privity, collateral estoppel is not an issue in the present matter.

Const. amend. IV.[5] Generally, a police officer's decision to stop an automobile comports with the Fourth Amendment if it is justified by reasonable suspicion or probable cause. *See Terry v. Ohio*, 392 U.S. 1 (1968); *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003).

In the present matter, reasonable suspicion is the key inquiry. (Doc. 11, pp. 5–7; Doc. 12, pp. 4–6.) Reasonable suspicion exists if the officer conducting a stop has "a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000). The reasonable suspicion must be more than an "inchoate and unparticularized suspicion or 'hunch,'" and must be based on "specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27.

Moreover, when a defendant raises the defense of qualified immunity, as Defendants do here (Doc. 11, pp. 4–5), the standard is "arguable" reasonable suspicion. *See Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332–33 (11th Cir. 2004); *Jackson v. Sauls*, 206 F.3d 1156, 1165–66 (11th Cir. 2000). The test is whether an objectively reasonable officer with the same information and under the same circumstances could have believed that reasonable suspicion existed. *See Crosby*, 394 F.3d at 1332.

### i.  Officer Springer in his Individual Capacity

Plaintiff sues Officer Springer in both his individual and official capacities. (Doc. 4, ¶¶ 19–20.) If sued individually, a municipal officer may raise an affirmative defense of qualified immunity. *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.

---

[5] The Fourth Amendment is applicable to the states and Defendants in this case through the Fourteenth Amendment. *Payton v. New York*, 445 U.S. 573, 576 (1980).

1991). "Qualified immunity protects municipal officers from liability in [Section] 1983 actions as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). There are two steps to establish qualified immunity.

At the first step, "the officer must . . . show that he acted within his discretionary authority." *Id.* (citation omitted). The question is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) (internal quotation marks and citation omitted). Because the procedural posture of this Order takes Plaintiff's factual allegations as true and does not afford Officer Springer a chance to show that he acted within his discretionary authority, the Court assumes for the purposes of this motion, but does not decide, that this element has been met.

At the second step, the inquiry involves two prongs: (1) "whether the facts presented, taken in the light most favorable to the non-moving party, establish a constitutional violation"; and (2) "whether the right was clearly established." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The second prong focuses on whether the "state of the law" provided the officer with "fair warning that [his] alleged treatment [of the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 731 (2002). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 635 (1987).

Regarding the first prong, Defendants contend that Officer Springer had

reasonable suspicion based on the fact that Plaintiff was driving at a slow speed by a business that was closed at 4:15 a.m. (Doc. 11, p. 6.) Defendants state that "[c]ertainly, one rational inference is that a group of people driving slowly by the front of closed stores in a strip mall at 4:15 [a.m.] are planning a burglary." (*Id.* at 7.) Plaintiff responds that "it is just as rational of an inference to believe they were just looking at the stores [sic] hours of operation, or possibly even window shopping for the next day." (Doc. 12, p. 4.) Plaintiff further asserts that Officer Springer's stop was based on "mere suspicion and not a reasonable[,] articulable suspicion" because Officer Springer reported that "the vehicle's presence at the business appeared to be suspicious due to the time of day and the fact that the business was closed." (Doc. 12, p. 6; Doc. 4, p. 4 (emphasis removed).)

The Court accepts Plaintiff's factual allegations as true for the purposes of the motion to dismiss—that Officer Springer stopped Plaintiff because he was driving slowly by a closed storefront at 4:15 a.m.—and finds that these facts sufficiently allege a claim of unlawful search and seizure for lack of arguable reasonable suspicion. The Court does not find that reasonable suspicion was lacking, only that it was sufficiently pled, and reserves that determination for the summary judgment stage. The facts as alleged make plausible a violation of the Fourth Amendment.

Regarding the second prong, the law is clear that an officer must have more than a mere "hunch," and must "have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity." *Terry*, 392 U.S. at 27; *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007) (quoting *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000)). Whether a reasonable officer would be on notice that Officer Springer's stop of Plaintiff was unlawful is an

inquiry that depends on facts known to Officer Springer. Thus, at this stage, Plaintiff has sufficiently alleged that his right to be free from unreasonable searches and seizures was clearly established. *Cf. Hope v. Pelzer*, 536 U.S. at 731 (citing *United States v. Lanier*, 520 U.S. 259, 266 (1997)) (noting that officers can be on notice even in novel factual situations). Accordingly, the motion to dismiss is denied as to the Section 1983 Fourth Amendment claim for the allegedly unlawful traffic stop against Officer Springer in his individual capacity.

### ii. Officer Springer and Chief Rooney in their Official Capacities

The Court considers both Officer Springer and Chief Rooney to be sued in their official capacities.[6] "[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent. Such suits against municipal officers are, therefore, in actuality, suits directly against the city that the officer represents." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (internal quotation marks and citations omitted); *see also Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (noting that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). Accordingly, the Court finds that Plaintiff's Section 1983 claims against Officer Springer in his official capacity and Chief Rooney are due to be dismissed because Plaintiff has brought Section 1983 claims against the City.

---

[6] Plaintiff explicitly sues Officer Springer in his official capacity in addition to his individual capacity. (Doc. 4, ¶ 20.) Plaintiff does not specifically assert both capacities as to Chief Rooney. In the absence of such language, because Chief Rooney is often paired with the City as a defendant (Counts II, III, IV, V, VII, and IX) and because he is only ever referred to as "Chief Paul Rooney" and "Chief of the Orlando Police Department," the Court understands Chief Rooney to be sued in his official capacity only.

### iii.  The City

A municipality may be held liable under Section 1983 only when the constitutional deprivation was undertaken pursuant to a policy or custom; respondeat superior is not an appropriate basis for suit. *Pembaur v. Cincinnati*, 475 U.S. 469, 478–81; *St. Louis v. Praprotnik*, 485 U.S. 112, 121–22 (1988); *Monell*, 436 U.S. at 690, 694. "[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur*, 475 U.S. at 480. A plaintiff wishing to recover against a municipality under Section 1983 must properly allege: (1) a policy or custom; or (2) a failure to train or supervise, arguably a kind of policy or custom claim.[7]

### 1.  Policy or Custom

A municipal act rising to the level of a policy or custom can be established in one of three ways: (1) an express policy, (2) a widespread practice that is so well-settled and permanent as to constitute a custom, or (3) the act or decision of an official with final policymaking authority. *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966–68 (11th Cir. 2002). A policy or custom has been further defined as a "deeply imbedded traditional way[] of carrying out policy," *Fundiller v. Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985), or the tacit authorization or display of deliberate indifference towards police misconduct, *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (citation omitted). The "official policy or custom must be the moving force of the constitutional violation in order to establish liability of a government body under [Section] 1983." *Gilmere v. City of Atlanta*, 737 F.2d 894, 901 (11th Cir. 1984).

---

[7] Although arguably a policy or custom claim, the Court discusses the failure to train or supervise theory separately.

Plaintiff alleges no ultimate facts supporting his conclusion that the City had a policy or custom that was responsible for Plaintiff's alleged injuries. Accordingly, Plaintiff fails to raise this claim above the speculative level. Plaintiff merely makes conclusory statements that the City has a policy or custom that "permits, encourages and praises" the use of illegally obtained evidence, the material misrepresentation of facts in arrest affidavits, and the conducting of traffic stops lacking probable cause or reasonable suspicion.[8] (Doc. 4, ¶ 41(a)–(c).) Factual allegations, rather than conclusory statements of law, are required under the pleading standards articulated in *Iqbal* and *Twombly*.

### 2.  Failure to Train or Supervise

Section 1983 liability for failure to train or supervise will only be imposed on a municipality where the municipality "inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989)). Failure to train or supervise is only a policy when deliberate indifference is evidenced. *City of Canton*, 489 U.S. at 388. To establish deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350.

Plaintiff alleges in conclusory fashion that the City failed to adequately train or supervise employees, that the need for such training and supervision was obvious, and that Defendants were deliberately indifferent to the need for training or supervision. (*Id.*,

---

[8] Plaintiff also raises a claim of failure to adequately train or supervise (Doc. 4, ¶ 41(d)), which the Court addresses *infra*.

¶¶ 51–55.) Plaintiff does not allege what kind of training or supervision was in place, what events or incidents occurred that would put Defendants on notice of the need for more or different training or supervision to meet the deliberate indifference requirement, or how the training and supervision at the time caused the alleged deprivation of his rights. While detailed factual allegations are not required, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), something more than legal conclusions, which are not entitled to the presumption of truth, must be alleged to withstand a motion to dismiss.

As Plaintiff fails to state a claim for relief on either the custom or policy or failure to train or supervise theories, the Section 1983 Fourth Amendment claim for the allegedly unlawful traffic stop against the City is due to be dismissed.

## B. Malicious Prosecution in Violation of the Fourth Amendment (Count IV)

The second claim that Plaintiff alleges pursuant to Section 1983 is a violation of the Fourth Amendment for the allegedly malicious criminal prosecution brought against him. Plaintiff brings this claim against the City,[9] alleging that the City caused Plaintiff "to be wrongfully and forcibly arrested, imprisoned and restrained of his liberty." (Doc. 4, p. 6, ¶ 34.)

Malicious prosecution can form a basis for a Fourth Amendment claim under Section 1983. *Uboh v. Reno*, 141 F.3d 1000, 1002–03 (11th Cir. 1998).[10] To establish a

---

[9] Plaintiff also brought suit against Chief Rooney for Section 1983 malicious prosecution, but for the reasons discussed *supra* regarding official capacity claims, this claim is dismissed as to Chief Rooney because Plaintiff also brought the claim against the City.

[10] *See also Whiting v. Traylor*, 85 F.3d 581, 584 (11th Cir. 1996) ("Labeling . . . a [S]ection 1983 claim as one for 'malicious prosecution' can be a shorthand way of describing a kind of legitimate [S]ection 1983 claim: the kind of claim where the plaintiff, as part of the commencement of a criminal proceeding, has been unlawfully and forcibly restrained in violation of the Fourth Amendment and injuries, due to that seizure, follow

malicious prosecution claim under Section 1983, a plaintiff must prove: (1) "the elements of the common law tort of malicious prosecution"; and (2) "a violation of his Fourth Amendment right to be free from unreasonable seizures." *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010).

Plaintiff has not adequately pled a Fourth Amendment violation of his right to be free from unreasonable seizures. Plaintiff does not allege that the City had a custom or policy or failed to train or supervise employees in a way that caused Plaintiff to be seized in relation to the prosecution. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004). Plaintiff thus fails to allege sufficient facts as to the second prong.[11] Accordingly, the Section 1983 malicious prosecution claim against the City is due to be dismissed.

## II. State Law Claims[12]

### A. All State Law Claims Against Chief Rooney are Dismissed

As a preliminary matter, because Plaintiff sues Chief Rooney in his official capacity, *see supra* note 6, the state law claims against Chief Rooney are due to be dismissed because Plaintiff also brings suit against the City. *See* Fla. Stat. § 768.28(9)(a) ("The exclusive remedy for injury or damage suffered as a result of an act,

---

as the prosecution goes ahead.").

[11] The Court declines to address the first prong, as Plaintiff's failure to allege sufficient facts in support of the second prong independently results in a failure to state a claim for relief.

[12] Plaintiff brings state law claims against both Officer Springer and the City. The Court notes that because Officer Springer is alleged to have acted within the scope of his employment (Doc. 4, ¶ 21), pursuant to Florida Statutes Section 768.28(9)(a), he is immune from liability under state law unless he acted in bad faith, with malicious purpose, or in wanton and willful disregard of human rights, safety, or property. If he is held liable for a state law tort, then the City cannot be held liable, and *vice versa. See* Fla. Stat. § 768.28(9)(a); *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987). However, alternative pleading is permitted. Fed. R. Civ. P. 8(d)(2).

event, or omission of an officer . . . of the state or any of its subdivisions . . . shall be

action against the government entity, *or* the head of such entity in her or his official

capacity . . . unless such act or omission was committed in bad faith or with malicious

purpose or in a manner exhibiting wanton and willful disregard of human rights, safety,

or property." (emphasis added)). The state law claims against Chief Rooney in his

official capacity are thus dismissed as duplicative.

### B.  False Arrest and False Imprisonment (Counts V–VIII)

Plaintiff brings false arrest and false imprisonment claims against the City[13]

(Counts V, VII) and against Officer Springer in his individual capacity (Counts VI, VIII).

### i.  The City

In its claims against the City, Plaintiff alleges that Officer Springer acted "in bad

faith, and with willful disregard of the human rights, safety and property" of Plaintiff.

(Doc. 4, ¶¶ 62.) Florida Statutes Section 768.28(9)(a) provides that a city is immune

from state tort liability for the actions of an employee when the employee acted in bad

faith, with malicious purpose, or in wanton and willful disregard of human rights, safety,

or property. Fla. Stat. § 768.28(9)(a). As such, Plaintiff's claim against the City for false

arrest is due to be dismissed.

### ii.  Officer Springer

Although Plaintiff alleges state law tort claims of false imprisonment and false

arrest separately, they "are different labels for the same cause of action," and the Court

will treat them as a single claim. *Weissman v. K-Mart Corp.*, 396 So. 2d 1164, 1164 n.1

(Fla. 3d DCA 1981); *see also Andrews v. Fla. Parole Comm'n*, 768 So. 2d 1257, 1266

---

[13] Plaintiff also brought suit against Chief Rooney for false arrest and false imprisonment, but for the reasons discussed *supra*, this claim is dismissed as to Chief Rooney because Plaintiff also brought the claims against the City.

(Fla. 1st DCA 2000) (noting that false arrest and false imprisonment are "essentially the same tort"). Under Florida law, false arrest is "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty. A plaintiff must show that the detention was unreasonable and unwarranted under the circumstances." *Rivers v. Dillards Dep't Store, Inc.*, 698 So. 2d 1328, 1331 (Fla. 1st DCA 1997) (internal quotation marks and citation omitted). A defendant who proximately causes false arrest, directly or through indirect procurement, can be held liable. *Pokorny v. First Fed. Sav. & Loan Ass'n of Largo*, 382 So. 2d 678, 681 (Fla. 1980). Probable cause is an affirmative defense to a claim of false arrest. *Von Stein v. Brescher*, 904 F.2d 572, 584 n.19 (11th Cir. 1990).

Plaintiff alleges that he was arrested without probable cause. (Doc. 4, ¶¶ 22–31, 60–61, 65–66, 70, 73.) Specifically, Plaintiff alleges that he was stopped by Officer Springer without reasonable suspicion and that Officer Springer conducted a protective frisk, which turned up a firearm. (Doc. 4, ¶¶ 22–29.) Officer Springer then searched Plaintiff's vehicle and found another firearm. (*Id.* ¶ 30.) Plaintiff was subsequently arrested. (*Id.* ¶ 31.) Plaintiff argues that the initial unlawful stop means that Officer Springer did not have probable cause to arrest him. (Doc. 12, pp. 7–8.)

The key question is whether a protective frisk can be valid under the Fourth Amendment when it immediately follows an allegedly invalid *Terry* stop, such that the evidence obtained from the frisk may provide probable cause for a lawful arrest. That is, can the intervening protective frisk "cure" the initial unlawful stop? In dicta, the Supreme Court seems to have answered that question in the negative. *See Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009) ("[Under *Terry v. Ohio*, a stop and frisk is] constitutionally permissible if two conditions are met. First, the investigatory stop must be lawful. . . .

Second, . . . the police officer must reasonably suspect that the person stopped is armed and dangerous."); *see also Terry v. Ohio*, 392 U.S. 1, 32 (1968) (Harlan, J., concurring) ("[I]f the frisk is justified in order to protect the officer during an encounter with a citizen, the officer must first have constitutional grounds to insist on an encounter, to make a forcible stop."); *United States v. Pruitt*, 174 F.3d 1215, 1221 n.4 (11th Cir. 1999) ("The fact that [an officer's] hunch ultimately turned out to be correct . . . is irrelevant for purposes of the Fourth Amendment. To hold otherwise would open the door to patently illegal searches by government officials, who would attempt to justify the legality of their conduct after-the-fact. The Fourth Amendment requires a showing of reasonable suspicion at the time the motor vehicle occupants are detained, not thereafter, once the results of the car or van search are known.").

Because Plaintiff states a claim for relief that he was unlawfully stopped without reasonable suspicion, he therefore sufficiently alleges that he was subsequently frisked unlawfully and arrested without probable cause. Thus, Plaintiff has sufficiently alleged his unlawful restraint and detention.

The motion to dismiss is accordingly denied as to the false arrest claims against Officer Springer. In an amended complaint, false arrest and false imprisonment should not be pled separately.

### C. Malicious Prosecution (Counts IX, X)

Plaintiff brings malicious prosecution claims against the City[14] (Count IX) and against Officer Springer in his individual capacity (Count X).

---

[14] Plaintiff also brought suit against Chief Rooney for malicious prosecution, but for the reasons discussed *supra*, this claim is dismissed as to Chief Rooney because Plaintiff also brought the claim against the City.

### i. The City

Because malice is an element of a malicious prosecution claim and cities are immune from liability for the malicious acts of their employees, a city may not be sued for the state law tort of malicious prosecution. *See* Fla. Stat. § 768.28(9)(a); *see also, e.g.*, *Fla. Dep't of Envtl. Prot. v. Green*, 951 So. 2d 918, 920 (Fla. 4th DCA 2007) ("Because 'malice' is a necessary element of a malicious prosecution claim and section 768.28(9)(a) immunizes the State and its agencies from 'malicious' acts of its employees, [the plaintiff] is barred from bringing a malicious prosecution claim against [the state agency]."); *Irani v. City of Hallandale*, 756 So. 2d 110, 110 (Fla. 4th DCA 1999) ("We write only to note that the trial court correctly dismissed [the plaintiff's] malicious prosecution count [against the city] as barred by section 768.28(9) . . . ."). The state law malicious prosecution claim against the City is thus due to be dismissed.

### ii. Officer Springer

The elements of the common law tort of malicious prosecution are: (1) an original proceeding against the present plaintiff was commenced; (2) the present defendant was the legal cause of the original proceeding; (3) the disposition of the original proceeding was a bona fide termination in plaintiff's favor; (4) there was an absence of probable cause for the original proceeding; (5) the present defendant acted with malice; and (6) the present plaintiff suffered damages. *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 946 (11th Cir. 2008).

Plaintiff alleges that Officer Springer is liable for malicious prosecution for causing Plaintiff "to be wrongfully and forcibly arrested, imprisoned and restrained of his liberty." (Doc. 4, ¶¶ 76.) Plaintiff states that the prior criminal proceeding initiated against him "was dropped after the trial court granted [his] Motion to Suppress," which "was a

bona fide termination in [his] favor." (Doc. 4, ¶¶ 77.) Plaintiff further states that Officer Springer was the legal cause of the prior criminal proceeding, that there was an absence of probable cause for that proceeding, that Officer Springer acted with malice, and that Plaintiff has suffered damages as a result. (Doc. 4, ¶¶ 78–81.)

Plaintiff has pled sufficient facts to support the elements that an original proceeding was brought against him, that the original proceeding ended in a bona fide termination in his favor, *see Floyd v. Ott*, 221 So. 2d 163, 164 (Fla. 2d DCA 1969) (stating that a nolle prosequi may be "a sufficient termination for purposes of an action for malicious prosecution"),[15] that there was an absence of probable cause (*see supra* discussion of false arrest claims), that Officer Springer acted with malice, *see* Fed. R. Civ P. 9(b) ("Malice . . . may be alleged generally."); *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1357 (Fla. 1994) (malice may be inferred from lack of probable cause), and that Plaintiff suffered damages. However, Plaintiff's conclusory assertion that Officer Springer was the legal cause of the prior criminal proceeding is not enough.

Police officers are not the legal cause of an original proceeding where there is "no evidence that they had anything to do with the decision to prosecute or that they 'improperly influenced' that decision." *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 947 (11th Cir. 2008) (citing *Eubanks v. Gerwen*, 40 F.3d 1157, 1160–61 (11th Cir. 1994)). However, if a police officer fabricates evidence, causing the prosecutor to bring charges on the basis of false and misleading evidence, then that conduct satisfies the

---

[15] *See also Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1356 (Fla. 1994) ("[W]hen a plaintiff established that an underlying criminal case was nol prossed and presents evidence that the nol pros was not the result of a negotiated plea or bargain, the burden then shifts to the defendant to present evidence to the contrary and the issue becomes one for a jury to decide."); *Union Oil of Cal. Amsco Div. v. Watson*, 468 So. 2d 349, 354 (Fla. 3d DCA 1985) ("[W]here a dismissal is taken because of insufficiency of the evidence, the requirement of a favorable termination is met.").

legal cause element of a malicious prosecution claim. *Id.*

Plaintiff makes no such factual allegations. In Counts III and IV of the Amended Complaint, Plaintiff alleges that the City and Chief Rooney permit and encourage a policy of "misrepresent[ing] material facts in arrest affidavits" (Doc. 4, ¶ 41(b)) and that they were deliberately indifferent to the fact that this policy would deprive Plaintiff of his right not to be subject to criminal charges based upon "false, fabricated, misrepresented and omitted evidence." (*Id.* ¶¶ 44, 54.) However, Plaintiff has not set forth any factual allegation that any evidence was actually fabricated by Officer Springer so as to make him the legal cause of the original proceeding. Accordingly, the motion to dismiss is granted as to the state law malicious prosecution claim against Officer Springer.

### D.  Intentional Infliction of Emotional Distress (Count XI)

Finally, Plaintiff brings an intentional infliction of emotional distress claim against the City[16] and Officer Springer (Count XI).

To state a claim for intentional infliction of emotional distress under Florida law, a plaintiff must allege: "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) [which] caused the suffering; and (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990). In order to satisfy the outrageous conduct requirement, a plaintiff must allege that the conduct was "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson,* 467 So. 2d 277, 278–79 (Fla. 1985).

Plaintiff makes conclusory statements regarding these elements. (Doc. 4, ¶¶ 90–

---

[16] Plaintiff also brought suit against Chief Rooney for intentional infliction of emotional distress, but for the reasons discussed *supra*, this claim is dismissed as to Chief Rooney because Plaintiff also brought the claim against the City.

93.) While Plaintiff lists the conduct he finds outrageous under the second prong—"fabricating evidence, making misleading statements and omission[s], conducting unlawful seizures, encouraging such actions, and failing to train and supervise the manner in which to conduct proper and lawful traffic stops/narcotics investigations" (Doc. 4, ¶ 91)—most of these statements are unsupported by factual allegations. In addition, the other elements are insufficiently supported by wholly conclusory statements. Such bare assertions are inadequate to survive a motion to dismiss. Accordingly, the intentional infliction of emotional distress claim against both the City and Officer Springer is due to be dismissed.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.     Defendants' Motion to Dismiss Plaintiffs' Complaint and Supporting Memorandum of Law (Doc. 11) is **GRANTED IN PART** and **DENIED IN PART**.

2.     Count I construed as a Section 1983 claim for unlawful stop and search in violation of the Fourth Amendment: The motion is **DENIED** as to Officer Springer in his individual capacity; the claim is **DISMISSED WITH PREJUDICE** as to Chief Rooney and Officer Springer in their official capacities; and **DISMISSED WITHOUT PREJUDICE** as to the City.

3.     Counts II and III are **DISMISSED WITH PREJUDICE** as they address theories of liability rather than constitutional deprivations actionable under Section 1983. The custom or policy and failure to train or supervise theories would be properly alleged against the City under Counts I and IV.

4.     Count IV Section 1983 claim for malicious prosecution in violation of the

Fourth Amendment: The claim is **DISMISSED WITH PREJUDICE** as to Chief Rooney; and **DISMISSED WITHOUT PREJUDICE** as to the City.

5. Counts V–VIII state law claims for false arrest and false imprisonment: The motion is **DENIED** as to Officer Springer; the claim is **DISMISSED WITH PREJUDICE** as to Chief Rooney; and **DISMISSED WITHOUT PREJUDICE** as to the City. False arrest and false imprisonment should not be pled as different claims.

6. Counts IX and X state law claims for malicious prosecution: The claims are **DISMISSED WITH PREJUDICE** as to Chief Rooney and the City; and **DISMISSED WITHOUT PREJUDICE** as to Officer Springer.

7. Count XI state law claim for intentional infliction of emotional distress: The claim is **DISMISSED WITH PREJUDICE** as to Chief Rooney; and **DISMISSED WITHOUT PREJUDICE** as to Officer Springer and the City.

8. Plaintiff is **DIRECTED** to file a second amended complaint consistent with this Order on or before January 7, 2012.[17]

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 7, 2012.

ROY B. DALTON JR.
United States District Judge

---

[17] Plaintiff should note that the Court found the Amended Complaint disorganized and confusing—particularly the conflation of "invasion of privacy" in Count I with the alleged constitutional deprivation of the allegedly unlawful stop and search and the use of separate counts for the allegations of Section 1983 theories of municipal liability. Plaintiff should remedy those problems and better organize the second amended complaint.

Copies: Counsel of Record