**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DWAINE HARGIS,

        Plaintiff,

v.                                      Case No. 6:12-cv-723-Orl-37KRS

CITY OF ORLANDO, FLORIDA; and
OFFICER THEODIS SPRINGER,

        Defendants.

## ORDER[1]

This cause is before the Court on the following:

1. Defendants' Motion for Summary Judgment (Doc. 24), filed May 24, 2013; and

2. Plaintiff's Response to Defendants' Motion for Summary Judgment and Memorandum of Law (Doc. 25), filed June 7, 2013.

Upon consideration, the Court hereby grants Defendants' motion.

## BACKGROUND[1]

On May 12, 2008, around 1:00 or 2:00 a.m.,[2] Defendant Theodis Springer ("Officer Springer"), an officer with the Orlando Police Department for nearly twenty years, observed Plaintiff in his car in an empty parking lot in the International Drive area

---

[1] The Court derives the factual allegations in this Order from the record and construes them in the light most favorable to Plaintiff. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). The actual facts may be different than those stated here. *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).

[2] Officer Springer testified that the incident took place around 4:00 a.m. (Doc. 24-2, Springer Dep. 9:11–13.) However, construing the facts in the light most favorable to Plaintiff, the Court assumes that the incident took place around 1:00 or 2:00 a.m., as Plaintiff testified.

of Orlando. (Doc. 24-1, Hargis Dep. 17:1–7, 18:12–16, 24:8–11; Doc. 24-2, Springer Dep. 5:8–10.) Plaintiff, who was the driver, and two passengers were driving to a gas station to get soda and cigarettes. (Hargis Dep. 19:2–10.) Earlier that evening, Officer Springer had received a briefing regarding a recent string of commercial burglaries in the International Drive area that were taking place in the early morning hours. (Springer Dep. 6:3–11.) On his way to the gas station, Plaintiff cut through the parking lot of a restaurant that was closed for the night. (Hargis Dep. 20:18–21:10, 24:22–25.) Plaintiff traveled at five to seven miles per hour along the side of the restaurant to the front of the restaurant and then stopped at a stop sign. (*Id.* at 22:1–10, 23:23–24:1, 24:18–21.) Plaintiff realized that one of the passengers left their money at home and that he had to turn around and go back. *(Id.* at 25:8–14.) Plaintiff made a full lap around the parking lot.[3] (*Id.* at 26:21–25.) Officer Springer then turned on his patrol lights and siren and pulled Plaintiff over. (*Id.* at 27:7–11, 28:5–6.) Officer Springer subsequently called for backup. (Springer Dep. 14:13–15.)

Officer Springer asked Plaintiff for his driver's license and registration, which Plaintiff provided. (Hargis Dep. 28:6–16.) Officer Springer went back to his police car and within thirty seconds, Plaintiff's vehicle was surrounded by other officers. (*Id.* at 29:15–25.) One of those officers pointed a shotgun at Plaintiff's face. (*Id.* at 30:23–31:11.) Other officers stood on the passenger side of the car with their weapons drawn.[4] (*Id.* at 31:14–24.)

---

[3] While Officer Springer did not testify to this fact, it is uncontroverted in the record.

[4] Officer Springer testified that none of the officers drew their weapons until after Plaintiff and the passengers exited the car. (Springer Dep. 19:25–20:6.) However, construing the facts in the light most favorable to Plaintiff, the Court assumes that the officers drew their weapons earlier.

2

Within another minute, Officer Springer returned to Plaintiff's vehicle and told Plaintiff to step out of the car. (*Id.* at 30:16–19, 31:25–32:2.) Plaintiff asked why, and the officer who was pointing the shotgun at him told him to "get out now." (*Id.* at 32:20–23.) Plaintiff then exited the vehicle. (*Id.* at 32:23–24.) Officer Springer noticed that Plaintiff was acting unusually nervous and shaking.[5] (Springer Dep. 21:20–23, 22:25–23:3.) Officer Springer then frisked Plaintiff for safety reasons. (Hargis Dep. 33:2–10.) Officer Springer found a gun in a holster on Plaintiff's waistband. (*Id.* at 33:14–24.) One-half hour later, Plaintiff was placed in a police car under arrest and taken to the police station. (*Id.* at 35:5–9.) When Plaintiff asked why he was under arrest, the officers did not respond. (*Id.* at 35:18–22.) Plaintiff was charged, *inter alia*, with possession of a firearm by a convicted felon. (*See* Doc. 25-2, p. 2; Hargis Dep. 15:3–6; *see also* Doc. 24, p. 5; Doc. 25, p. 3.) During his criminal prosecution, the state court granted Plaintiff's (then-defendant's) motion to suppress the evidence. (Doc. 25-2, p. 2.) Plaintiff represents that the motion to suppress was premised on the ground that Officer Springer unlawfully stopped Plaintiff. (Doc. 25, p. 3.)

Plaintiff brought suit against both Officer Springer in his individual capacity and the City of Orlando under 42 U.S.C. § 1983 for unlawful stop and search in violation of the Fourth Amendment (Counts I[6] and IV) and against Officer Springer in his individual capacity for false arrest under state law (Count V).[7] (Doc. 20.) Defendants moved for summary judgment. (Doc. 24.) Plaintiff opposed. (Doc. 25.) Defendants did not reply.

---

[5] While Plaintiff did not testify to this fact, it is uncontroverted in the record.

[6] Plaintiff titled Count I "Invasion of Privacy and Malicious Prosecution in Violation of Fourth and Fourteenth Amendments." (Doc. 19, p. 5.) The Court construed it as a claim for unlawful stop and search in violation of the Fourth Amendment. (*See* Doc. 22, p. 3 n.3.)

[7] Plaintiff brought a number of other claims, which the Court previously dismissed. (Doc. 22.)

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the nonmoving party must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citation omitted).

## DISCUSSION

1. **Section 1983**

    a. **Officer Springer (Count I)**

      i. **Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The entitlement is an immunity from suit rather than a mere defense to liability . . . [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful

acts occurred. . . . Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Here, Officer Springer was acting within his discretionary authority as a police officer when he conducted the investigatory stop. *See McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009). Thus, the burden shifts to Plaintiff to show that Officer Springer is not entitled to qualified immunity.

The Court must first determine whether the facts, viewed in the light most favorable to Plaintiff, demonstrate that Officer Springer's conduct violated a constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If there was no violation, the inquiry ends and Officer Springer is entitled to qualified immunity; if there was a violation, then the Court must determine whether the violated right was clearly established. *Id.* The Court is "permitted to exercise [its] sound discretion" in determining which step to address first. *Id.* at 235.

### ii. Fourth Amendment

"The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 9 (1968)) (internal quotation marks omitted). An investigatory stop is constitutional "if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)) (internal quotation marks omitted). The reasonable suspicion must be more than a "hunch" and must be based on "specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience."

*Terry*, 392 U.S. at 27. The standard for reasonable suspicion is totality of the circumstances, and individual acts that are innocent in themselves can create reasonable suspicion when considered together. *Arvizu*, 534 U.S. at 273–74.

"Whether an officer has reasonable suspicion is an objective question viewed from the standpoint of a reasonable officer at the scene"; the question "is not whether a specific arresting officer . . . actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion objectively existed." *Hicks v. Moore*, 422 F.3d 1246, 1252 (11th Cir. 2005). "A suspect's conduct might be ambiguous and susceptible of an innocent explanation, but an officer equipped with articulable suspicion is entitled to resolve that ambiguity in favor of an investigatory stop." *United States v. Graham*, 496 F. App'x 961, 962 (11th Cir. 2012). The likelihood of criminal activity "need not rise to the level required for probable cause, and it falls considerably short of a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274 (citation omitted).

When a defendant raises the defense of qualified immunity, the standard is "arguable" reasonable suspicion. *See Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332–33 (11th Cir. 2004); *Jackson v. Sauls*, 206 F.3d 1156, 1165–66 (11th Cir. 2000). The test for arguable reasonable suspicion is whether an objectively reasonable officer with the same information and under the same circumstances could have believed that reasonable suspicion existed. *See Crosby*, 394 F.3d at 1332. "Qualified immunity is still available to an officer who mistakenly concludes reasonable suspicion is present, so long as the officer had 'arguable' reasonable suspicion for the investigatory stop." *S.S. ex rel. Montgomery v. Bolton*, No. 12-14932, 2013 WL 2494215, at *3 (11th Cir. June 11, 2013) (citing *Sauls*, 206 F.3d at 1165–66).

### iii. Collateral Estoppel

Plaintiff argues that because the state court granted Plaintiff's (then-defendant's) motion to suppress, Officer Springer is collaterally estopped from arguing that he had arguable reasonable suspicion. (Doc. 25, pp. 10–11.) As previously addressed by this Court, collateral estoppel is not an issue in this case. (*See* Doc. 18, p. 5, n.4.) It is true that the "rules of collateral estoppel apply to actions brought under 42 U.S.C. § 1983 and can give preclusive effect to judgments rendered in state criminal proceedings." *Webb v. Ethridge*, 849 F.2d 546, 549 (11th Cir. 1988). When a prior judgment was rendered by a state court, a federal court facing a collateral estoppel claim must apply the state's law of collateral estoppel. *Id.* "Under Florida law, collateral estoppel applies if (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction." *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1329 (11th Cir. 2003) (citations omitted).

While Plaintiff was a party to the state court criminal proceeding, the instant Defendants were not parties to that proceeding, nor were they in privity with the state of Florida. *See Farred v. Hicks*, 915 F.2d 1530, 1534 (11th Cir. 1990) ("[A]lthough [the plaintiff] was a party in the state criminal proceeding and is a party in this civil case, neither the police officers nor the [head of the police department] were parties to the criminal case."); *Gentile v. Bauder*, 718 So. 2d 781, 783 (Fla. 1998) (concluding that police officer was not in privity with the state such that liability under § 1983 could be imposed where evidence was suppressed in criminal proceeding because officer's affidavit in support of a search warrant was insufficient); *Pair v. Wilson*, No. 5:05cv137/SPM/MD, 2007 WL 2565982, at *8–9 (N.D. Fla. July 27, 2007) (concluding that the doctrine of collateral estoppel did not preclude arresting officer's

qualified immunity defense where traffic stop was found to be invalid in both state and federal courts because officer was not in privity with either the federal government or the state of Florida). Thus, because of a lack of privity, collateral estoppel does not preclude Officer Springer's qualified immunity defense.

### iv. Application

The Court concludes that Officer Springer is entitled to qualified immunity, as he had arguable reasonable suspicion to stop Plaintiff. This case is factually analogous to *United States v. Briggman*, 931 F.2d 705 (11th Cir. 1991). In that case, a twenty-one-year police veteran noticed a parked, occupied vehicle in the parking lot of several closed businesses at 4:00 a.m. *Id.* at 707. Numerous robberies and larcenies had recently occurred in the area. *Id.* The officer went around the parking lot twice, and on the second time, the suspect exited the parking lot. *Id.* The officer conducted an investigatory stop. *Id.* The U.S. Court of Appeals for the Eleventh Circuit affirmed the district court's denial of a motion to suppress on the ground that the officer had reasonable suspicion to conduct the stop. *Id.* at 709. The Eleventh Circuit stated:

> In this case, a highly experienced officer's suspicion reasonably was aroused when he noticed [the suspect] parked in a parking lot at 4:00 a.m. in a high crime area, when commercial establishments served by the lot were closed for the night. In departing the parking lot, [the suspect] attempted to evade the officer, who then made the stop.

*Id.* Based on these facts, the Eleventh Circuit concluded that there was no constitutional violation. *Id.*

Here, the standard is *arguable* reasonable suspicion, a lower threshold than the one met on similar facts in *Briggman*. Just as in *Briggman*, Plaintiff was driving in the early morning hours in a known high crime area through the parking lot of a business that was closed. Plaintiff drove slowly along the side of the business and made an

unusual maneuver around the parking lot to turn around and leave. A reasonable officer could perceive such a maneuver to be evasive given Officer Springer's presence in the parking lot. The only distinction between this case and *Briggman* is that the suspect in *Briggman* was parked outside of a closed business while Plaintiff in this case drove slowly past a closed business. The Court finds this to be a distinction without a difference, as someone "casing a joint" would likely drive slowly by the business to survey it. *See Illinois v. Wardlow*, 28 U.S. 119, 125 (2000) ("[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."). Under the totality of the circumstances, a reasonable officer could have believed that reasonable suspicion existed to conduct an investigatory stop. *See id.* at 124 (noting that "[a]n individual's presence in an area of expected criminal activity" alone is not sufficient to support a reasonable suspicion but is a relevant contextual consideration); *see also United States v. Hunter*, 291 F.3d 1302, 1306–07 (11th Cir. 2002) (finding reasonable suspicion where the suspect was in a high crime area where illegal activity was happening moments before, an officer saw a suspicious bulge on the suspect, and he left the scene when officers arrived); *United States v. Gordon*, 231 F.3d 750, 755–56 (11th Cir. 2000) (finding reasonable suspicion where the suspect was seen "standing, at night, within ten feet of a parked car, surrounded by largely abandoned buildings, in an area notorious for violent crime and drug trafficking" and fled when police arrived); *Bouye v. Marshall*, 102 F. Supp. 2d 1357, 1359–60, 1363 (N.D. Ga. 2000), *aff'd* 265 F.3d 1063 (11th Cir. 2001) (finding reasonable suspicion where, at 5:00 a.m., the suspect parked in the parking lot of an apartment complex with a high crime rate and left his car lights on while he went inside an apartment). Because arguable reasonable suspicion existed, Officer Springer is entitled to qualified immunity for the

investigatory stop.

As for the protective frisk, "[o]nce an officer has legitimately stopped an individual, the officer can frisk the individual so long as a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Graham*, 496 F. App'x at 962 (citation and internal quotation marks omitted). Officer Springer conducted a protective frisk of Plaintiff when he and other officers were in close proximity to Plaintiff, and thus in a zone of danger, and Plaintiff was acting nervous to a degree that Officer Springer, in his nearly twenty years of experience, felt was out of the ordinary (Springer Dep. 21:20–23, 22:2–3, 22:25–23:3). *Cf. Arvizu*, 534 U.S. at 273 (stating that in making a reasonable suspicion determination, an officer may draw on his own experience in making inferences about the information available to him). Plaintiff avers that he was nervous because the officers had their guns drawn and one officer had a gun pointed at him. (Doc. 25, p. 10.) However, Officer Springer recognized that multiple officers had their guns drawn (Springer Dep. 29:22–30:5) and he still felt that Plaintiff's nervousness was highly unusual. Thus, a reasonable person would be justified in thinking that Plaintiff posed a safety risk such that a protective frisk would be warranted.

Finally, Officer Springer had probable cause to arrest Plaintiff. Plaintiff is a convicted felon,[8] and upon finding the firearm on Plaintiff's person, Officer Springer had

---

[8] Plaintiff denied being a convicted felon during his deposition. (Hargis Dep. 13:2–16:25.) However, he testified that he had previously been charged with possession of ammunition by a convicted felon and the state court record shows that he was charged with possession of a firearm by a convicted felon. (*Id.* at 14:3–11; Doc. 25-2, p. 2 (granting the motion to suppress for, *inter alia*, possession of a firearm by a convicted felon).) Plaintiff has failed to come forward with evidence, other than his assertion, that he is not a convicted felon. Likewise, Plaintiff has failed to address this issue in his briefing. The Court thus concludes that there is not a *genuine* dispute of

probable cause to arrest him. *See Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (explaining that probable cause exists when an arrest is objectively reasonable based on the totality of the circumstances). Officer Springer is thus protected by qualified immunity for his actions. Accordingly, the motion for summary judgment is due to be granted as to Count I.

### b. The City (Count IV)

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Because the Court finds that Officer Springer is entitled to qualified immunity, the City may not be held liable. *See Penley v. Eslinger*, 605 F.3d 843, 854–55 (11th Cir. 2010) (holding that a sheriff sued in his official capacity could not be liable under § 1983 where there was no deprivation of rights); *see also Jiron v. City of Lakewood,* 392 F.3d 410, 419 n.8 (10th Cir. 2004) ("[W]hen a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation—i.e., the first step of the qualified immunity analysis—a finding of qualified immunity *does* preclude the imposition of municipal liability" (emphasis omitted)). Accordingly, the motion for summary judgment is therefore due to be granted as to Count IV.

---

material fact as to whether Plaintiff is a convicted felon.

    Further, even if there were a genuine factual dispute on this issue, Plaintiff has waived any argument that Officer Springer did not have probable cause to arrest him based on the contention that he was not a convicted felon. Indeed, Plaintiff's briefing only focused on the lawfulness of the investigatory stop, rather than the arrest. (*See* Doc. 12, pp. 2–6 (focusing only on the lawfulness of the investigatory stop in the motion to dismiss briefing); Doc. 25, p. 9 (misapplying the probable cause standard to the investigatory stop).) Thus, any argument as to whether Officer Springer had probable cause to arrest Plaintiff because he was not a convicted felon is waived, as Plaintiff never presented that argument to the Court.

11

**2. False Arrest (Count V)**

Because Plaintiff has no surviving federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claim. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); see also *Marshall v. Washington*, 487 F. App'x 523, 527 (11th Cir. 2012) (stating that a district court may decline to exercise supplemental jurisdiction over a state law claim when it has dismissed all claims over which it had original jurisdiction). Therefore, the false arrest claim is due to be dismissed without prejudice.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants' Motion for Summary Judgment (Doc. 24) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted as to the 42 U.S.C. § 1983 claims for unlawful stop and search in violation of the Fourth Amendment against Officer Springer and the City. The motion is denied as to the false arrest claim against Officer Springer.

2. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff on the 42 U.S.C. § 1983 claims for unlawful stop and search in violation of the Fourth Amendment. Plaintiff shall take nothing on these claims. Defendants are entitled to costs.

3. The false arrest claim against Officer Springer is **DISMISSED WITHOUT PREJUDICE**.

4. The Clerk is **DIRECTED** to close this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 13, 2013.

_____
ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

Case 6:12-cv-00723-RBD-KRS Document 26 Filed 08/13/13 Page 13 of 13 PageID 479